UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GERONT NEZIRI, | * |
| | * |
| Plaintiff-Petitioner, | * |
| | *   Civil Action No. 15-cv-13282-IT |
| v. | * |
| | * |
| JEH JOHNSON, et al., | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

May 5, 2016

TALWANI, D.J.

I.  Introduction

Petitioner Geront Neziri is an Albanian citizen who faces removal after using a false Italian identity and passport to enter the United States. He has been detained for over twenty-seven months during the pendency of his immigration proceedings.

Before the court is Neziri's Petition for Writ of Habeas Corpus [#1] seeking release from custody and Defendants' Motion for Summary Judgment [#18] on the habeas petition.[1] Because Neziri's detention has become unreasonably prolonged, Neziri is entitled to habeas relief in the form of an individualized bond hearing before an Immigration Judge. The Petition for Writ of Habeas Corpus [#1] is ALLOWED IN PART and DENIED IN PART and Defendants' Motion for Summary Judgment [#18] is DENIED.

---

[1] Defendants are Jeh Johnson, the Secretary of the Department of Homeland Security; Loretta Lynch, the United States Attorney General; Sean Gallagher, the Boston Area Immigration and Customs Enforcement Field Office Director; Sara Saldana, the Director of Immigration and Customs Enforcement; Steven W. Tomkins, the Sheriff of Suffolk County; and Yolanda Smith, the Superintendent of the South Bay House of Corrections.

II.     Factual and Procedural Background

The parties do not dispute any material facts. Neziri, an Albanian citizen, entered the United States in January 2001. Mot. Summ. J. Ex. N 1 [#18-16] (Decision to Detain). Based on his false Italian passport, the United States admitted Neziri as a purported Italian citizen under the Visa Waiver Program, 8 U.S.C. § 1187, which allows entrants from eligible countries such as Italy to stay in the United States for ninety days, subject to a number of requirements. Id.

In 2011, Department of Homeland Security ("DHS") issued Neziri a Notice to Appear. Mot. Summ. J. Ex. G [#18-9] (Notice to Appear dated December 6, 2011). Neziri subsequently cooperated with the Federal Bureau of Investigation in a criminal investigation, Opp'n Mot. Summ. J. Ex. D 2 [#21-4] (Department of Homeland Security's Written Closing Argument, dated July 17, 2014), and DHS Immigration and Customs Enforcement ("ICE") granted Neziri deferred action status, which allowed Neziri to remain in the United States and obtain employment authorization. Mot. Summ. J. Ex. I 1-2 [#18-11] (Notice of Deferred Action).

In December 2013, ICE revoked Neziri's deferred action status following two arrests for operating a vehicle under the influence. Id. at 2. Neziri was issued a Notice of Intent to Issue a Final Administrative Removal Order as a Visa Waiver Program violator, Mot. Summ. J. Ex. F. 2 [#18-8] (Notice of Intent to Issue a Final Administrative Removal Order), and a final administrative removal order. Id. at 1 (Final Administrative Order). ICE also determined that Neziri was to be detained and he was taken into custody on January 16, 2014. Mot. Summ. J. Ex. K 3 [#18-13] (Record of Deportable/Inadmissible Alien); Ex. E [#18-7] (Notice to EOIR).

Since being detained, Neziri has challenged his removal and his immigration proceedings before Immigration Judges, the Board of Immigration Appeals ("BIA"), and the

United States Court of Appeals for the First Circuit, where his Petition for Direct Review is pending and briefing is underway. Dkt., Neziri v. Lynch, No. 16-1101 (1st Cir. 2016).

Meanwhile, on September 3, 2015, Neziri commenced the instant action challenging his detention. Compl. [#1].[2]

On November 10, 2015, ICE decided as a matter of discretion to continue to detain Neziri, citing his recidivist criminal history and risk of flight. Mot. Summ. J. Ex. N (ICE Decision to Detain, dated November 10, 2015).

Neziri has been continually detained since January 16, 2014, a period of over twenty-seven months.

III.    Discussion

8 U.S.C. § 1226(a) provides for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." The statute provides further that, except as provided for certain criminal aliens, the government may either continue to detain an arrested alien or release the alien on conditions. Id. §§ 1226(a),(c).

Defendants assert that Neziri is not being detained pursuant to 8 U.S.C. § 1226. Instead, Defendants contend that detention is pursuant to 8 U.S.C. § 1187(c)(2), which provides that "a country may not be designated as a program country" under the Visa Waiver Program unless certain requirements are met, including that "[t]he government of the country accepts for repatriation any citizen, former citizen, or national of the country against whom a final executable order of removal is issued not later than three weeks after the issuance of the final

---

[2] He also sought a judgment declaring his asylum-only proceedings under the Visa Waiver Program unlawful and an order terminating his asylum only proceedings and compelling Defendants to re-institute removal proceedings against him. The court granted Defendants' Motion to Dismiss [#18] this claim for lack of subject matter jurisdiction. Order Mot. Dismiss [#38].

order of removal." Id. § 1187(c)(2)(E).³ Defendants ask the court to defer to the BIA's decision in Matter of A-W-, 25 I. & N. Dec. 45 (BIA 2009), where the BIA held that an Immigration Judge did not have jurisdiction to re-determine the conditions of custody of an alien admitted pursuant to the Visa Waiver Program because "the statutory authority for [such alien's] detention is contained in . . . 8 U.S.C.A. § 1187(c)(2)(E) . . . not . . . 8 U.S.C. § 1226." 25 I. & N. Dec. at 47-48.

Under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), before deferring to an agency's construction of a statute, the court must first determine whether Congress has directly spoken to the precise question at issue. Chevron, 467 U.S. at 842-43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). Here, 8 U.S.C. § 1226 explicitly provides for detention and release of aliens during their removal proceedings. Although the relevant statutory sections refer to the Attorney General's authority, the Homeland Security Act of 2002, Pub. L. No. 107–296, 116 Stat. 2135 (2002) ("Homeland Security Act"), transferred all immigration enforcement and administration functions vested in the Attorney General, with few exceptions, to the Secretary of Homeland Security. Reid v. Donelan, -- F.3d --, Nos. 14-1270, 14-1803, 14-1823, 2016 WL 1458915, at *12 n.1 (1st Cir. Apr. 13, 2016). Accordingly, Congress has directly spoken to the precise question at issue, giving the Secretary of Homeland Security the authority to detain and release aliens under 8 U.S.C. § 1226. The regulations implementing 8 U.S.C. § 1226(a) provide for a bail hearing for a

---

³ 8 U.S.C. § 1187(c)(2)(E) provides further that "[n]othing in this subparagraph creates any duty for the United States or any right for any alien with respect to removal or release. Nothing in this subparagraph gives rise to any cause of action or claim under this paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien."

detained alien in front of an Immigration Judge. 8 C.F.R. § 1236.1(d).

The BIA contends to the contrary that under the Homeland Security Act, "[t]he Attorney General no longer has authority over bond proceedings relating to aliens . . . who have been admitted pursuant to the Visa Waiver Program," and therefore the Attorney General "cannot delegate any such authority to the Immigration Judge." Matter of A-W-, 25 I. & N. Dec. at 48. The BIA offers no explanation, however, as to why the Secretary of Homeland Security "cannot delegate any such authority to the Immigration Judge" under 8 U.S.C. § 1226(a) or where in 8 U.S.C. § 1187(c)(2)(E) the BIA finds the Secretary of Homeland Security's authority to detain aliens.

Even assuming, however, that an aliens admitted the Visa Waiver Program may be detained pursuant to 8 U.S.C. § 1187, that statute should be construed, if fairly possible, to avoid a serious doubt as to its constitutionality. Zadvydas v. Davis, 533 U.S. 678, 689 (2001). Construing 8 U.S.C. § 1187 to permit indefinite detention of an alien would raise a serious constitutional problem. See id. at 690.[4] In Zadvydas, the Court held that ICE could not hold indefinitely detainees who had been ordered removed but where actual removal was not reasonably foreseeable. Id. at 699. Because indefinite detention "would raise a serious

---

[4] The court is aware of no appeals court cases where the petitioner who had entered the United States under the Visa Waiver Program and was in asylum-only proceedings brought a habeas petition challenging the length of his detention. In two district court cases raising such a challenge, the courts analyzed whether the detention was unreasonably prolonged under the general due process principles governing prolonged detention of removable aliens. See Bacuku v. Aviles, No. 15-2543 (MCA), 2016 WL 818894 (D.N.J. Mar. 2, 2016) (finding detention of twenty-three months to be unreasonably prolonged); Kim v. Obama, No. EP-12-CV-173-PRM, 2012 WL 10862140 (W.D. Tex. July 10, 2012) (finding nineteen month detention not unreasonably prolonged). Cf. Gomez Zuluaga v. Gonzales, No. 07-CV-2931, 2007 WL 2746831 (D.N.J. Sep. 14, 2007) (deciding not to impose due process limits on government's ability to detain Visa Waiver Program applicant who was deemed inadmissible at the border and therefore *never entered* the United States).

constitutional problem," the time period for post-removal detention must be "reasonable." Id. at 690, 700. Furthermore, in adopting a sliding temporal scale for determining when continued detention is reasonable, the Court has stated that "as the period of prior postremoval [order] confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id., at 701.

Subsequently, in Demore v. Kim, 538 U.S. 510, 513 (2003), the Supreme Court held that it was constitutional for ICE to hold a detainee while his removal proceedings were pending under 8 U.S.C. § 1226(c), the statute providing for detention of a criminal alien (even if before a final order of removal). However, the Court recognized that such detention would only last for the "brief period necessary for [the detainee's] removal proceedings." Id. The Court further reasoned that detention pending removal proceedings "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530; cf. id. at 532-33 ("Were there to be an unreasonable delay . . . in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.") (Kennedy, J., concurring).

Most recently, in Reid v. Donelan, -- F.3d --, Nos. 14-1270, 14-1803, 14-1823, 2016 WL 1458915 (1st Cir. Apr. 13, 2016), the First Circuit Court of Appeals recognized that, even though § 1226(c) required "categorical custody" for criminal aliens, when the duration of custody "exceeds reasonable bounds," the "constitutional imperatives of the Due Process Clause begin to eclipse the claimed justifications" for detention under §1226(c). Id. at *12. In determining whether continued detention is reasonable, the court suggested factors to consider: the total

length of detention, the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the promptness of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final order of removal.  Id. at *10.[5]  Applying these factors, the court held that the petitioner's fourteenth month detention was unreasonably prolonged.  Id. at *11

Under the principles set forth in Zadvydas, Demore, and Reid, Neziri's continued detention without a bail hearing violates due process.  Because this court should "interpret statutes with the presumption that Congress does not intend to pass unconstitutional laws," Reid, 2016 WL 1458915, at *5 (internal quotation marks omitted), this court finds that there is an implicit reasonableness limitation in any detention authority under the Visa Waiver Program and that Neziri's detention has become unreasonably long.  The most salient factor in finding Neziri's continued detention unreasonable is the length of his detention: about twenty-seven months, "well beyond the brief detainment contemplated in Demore."  Id. at *11 (detention of fourteen months was a factor in finding detention unreasonably prolonged).  Additionally, Neziri's proceedings are not likely to conclude in the near future.  The Petition for Direct Review is currently being briefed in the First Circuit.  Dkt., Neziri v. Lynch, No. 16-1101 (1st Cir. 2016).  During briefing, the First Circuit has stayed Neziri's removal, and should Neziri succeed, the First Circuit would remand the case to the BIA.  Id.  Neziri could therefore remain in detention for months longer without this court's intervention.

Defendants make two points in support of their assertion that Neziri's continued detention is constitutionally permissible.  First, they argue that Neziri's detention satisfies due

---

[5] The other factor the First Circuit suggested, "the period of detention compared to the criminal sentence," is relevant only to detention under §1226(c) and not under the Visa Waiver Program.

process because the government's regulatory interest in ensuring that Visa Waiver Program violators are available for immediate removal outweighs Neziri's liberty interest.  Indeed, the reasonableness of continued detention "must be measured 'primarily in terms of the [detention] statute's basic purpose.'"  Reid, 2016 WL 1458915, at *7 (quoting Zadvydas, 533 U.S. at 699) (noting that the purpose of § 1226(c) is the "categorical and mandatory [detention] of a certain class of criminal aliens").  Congress intended the Visa Waiver Program to be "quick and simple" to "promot[e] better relations with friendly nations, eliminat[e] unnecessary barriers to travel, stimulat[e] the travel industry, and alleviat[e] vast amounts of paperwork . . . ."  Handa v. Clark, 401 F.3d 1129, 1135 (9th Cir. 2005) (citing H.R. Rep. No 99-682, pt. I, at 50 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5654).  "At the same time, Congress was well aware of the potential for abuse that the program made possible" and "sought to eliminate that by, among other things . . . providing that [violators would] be deportable 'without any judicial recourse or review, except when claiming asylum.'"  Id. (quoting H.R. Rep. No. 106-564, at 7 (2000)).  One of the purposes of the Visa Waiver Program was thus "to have violators . . . removed without the extensive delays" of the normal removal process.  Id.

But the government's strong interest in protecting the Visa Waiver Program from abuse and providing for speedy removal cannot justify Neziri's indefinite and prolonged detention.  See Reid, 2016 WL 1458915, at *4 (noting that indeterminate detention "raises severe constitutional concerns"); Castañeda v. Souza, 810 F.3d 15, 44 (1st Cir. 2015) (en banc) (Torruella, J., concurring) ("[I]ndefinite detention without access to bond or bail of *any* person in the United States violates due process." (emphasis in original)).  In Reid, the First Circuit examined the strong government interest underlying § 1226(c).  The court noted that Congress passed § 1226(c) based on the concern that "criminal aliens too often obtained release" under the prior

statutory scheme where the Attorney General had broad discretion to release criminal aliens pending removal and "were thereby able to evade removal and continue committing crimes." Reid, 2016 WL 1458915, at *3.  But, even when noting that Congress intended § 1226(c)'s detention provision to be "mandatory" and "categorical," id. at *3, *9, the court nevertheless joined every other circuit in ruling that a reasonableness limitation was implicit in §1226(c).  Id. at *4, *12.  In other words, the First Circuit held that pre-removal detention must not be unreasonably prolonged even when that detention occurs pursuant to a statute passed to protect public safety.  The Visa Waiver Program admittedly serves important purposes.  It would be incongruous, however, for the court to find that the Visa Waiver Program's purposes are more compelling than those underlying § 1226(c) such that detention under the Visa Waiver Program is exempt from the Constitution's reasonableness limitation.

Second, Defendants argue that Neziri's detention is not unreasonably long because the length of his detention is not due to the government's dilatory tactics and instead due to circumstances within Neziri's control.  In particular, Defendants point to Neziri having twice sought relief in front of an Immigration Judge and moving the Immigration Judge and the BIA to continue a hearing and extend the briefing schedule, respectively.  Mot. Summ. J. Ex. P [#18-18] (Respondent's Motion to Continue Individual Hearing, dated March 6, 2014), and O [#18-17] (Detained Respondent's Motion to Extend Briefing Schedule, dated September 16, 2014).  The First Circuit has recently made clear that detention can still be unreasonably prolonged even where the "government did not 'delay' proceedings." Reid, 2016 WL 1458915, at *9; see also Diop v. ICE/Homeland Sec., 656 F.3d 221, 228 (3d Cir. 2011) (detention unreasonably prolonged even where government "doggedly pursued Diop's detention and removal for three years").  Indeed, "[t]otal duration matters to a person held in civil confinement." Reid, 2016 WL

9

1458915, at *9.  In Ly v. Hansen, the government argued that the petitioner's 500-day detention under §1226(c) was constitutionally permissible because the petitioner was "at least partially responsible for the length of the proceedings."  351 F.3d 263, 272 (6th Cir. 2003) (noting that the petitioner had applied for cancellation of removal and change of status and had caused at least one hearing to be rescheduled).  The Sixth Circuit, while noting that "courts must be sensitive to the possibility [of] dilatory tactics by the removable alien," rejected the government's argument, noting that "appeals and petitions for relief are to be expected as a natural part of the process" and that an "alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him."  Id.  Here, Defendants have admitted that Neziri's tactics were not improper or dilatory in any way.  Neziri seeking avenues of relief that he is entitled to seek does not exempt his detention from the constitutional requirement of reasonableness.

IV.     Remedy

Because the court has determined that Neziri's detention has become unreasonably prolonged, the court must determine what remedy is appropriate.  In Reid, the First Circuit affirmed the district court order that the petitioner receive a bond hearing in front of an Immigration Judge to determine whether the petitioner would pose a danger to the community or a flight risk.  2016 WL 1458915, at *12.  This court takes Reid as direction that, where an alien's detention has become unreasonably prolonged, an individualized bond hearing is more appropriate than simply ordering release.[6]

---

[6] ICE's discretionary determination as to the risk of danger or flight that Neziri poses does not suffice, as that determination appears not to have been made after a "hearing at which [ICE] bears the burden of proof."  Diop, 656 F.3d at 235.

10

V. Conclusion

Defendants' Motion for Summary Judgment [#18] on the habeas petition is DENIED. The Petition for Writ of Habeas Corpus [#1] is ALLOWED IN PART and DENIED IN PART.

Accordingly, it is ORDERED that Neziri be afforded an individualized bond hearing before an Immigration Judge within 14 days of the entry of this Memorandum & Order.

IT IS SO ORDERED.

May 5, 2016 /s/ Indira Talwani
 United States District Judge