UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GERONT NEZIRI, | * |
| | * |
| Petitioner, | * |
| | *   Civil Action No. 15-cv-13282-IT |
| v. | * |
| | * |
| JEH JOHNSON, et al., | * |
| | * |
| Respondents. | * |

ORDER ON ATTORNEY'S FEES

March 28, 2017

TALWANI, D.J.

I.   Introduction

Petitioner Geront Neziri, having prevailed in part on his petition for writ of habeas corpus, brings a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA").

The court concludes that the government's position was not "substantially justified," and that Neziri's request for fees, as adjusted below, is reasonable.

Accordingly, Neziri's Application/Motion for Attorney's Fees and Costs Pursuant to the Equal Access to Justice Act [#43] is ALLOWED in the amount of $13,783.

II.   Background

Neziri, an Albanian citizen, entered the United States in January 2001. Mot. Summ. J. Ex. N 1 [#18-16] (Decision to Detain). Based on his false Italian passport, the United States admitted Neziri as a purported Italian citizen under the Visa Waiver Program ("VWP"), 8 U.S.C. § 1187, which allows entrants from eligible countries such as Italy to stay in the United States for ninety days, subject to a number of requirements. Id.

In 2011, the Department of Homeland Security ("DHS") issued Neziri a Notice to Appear. Mot. Summ. J. Ex. G [#18-9] (Notice to Appear dated December 6, 2011). Neziri subsequently cooperated with the Federal Bureau of Investigation in a criminal investigation, Opp'n Mot. Summ. J. Ex. D 2 [#21-4] (Department of Homeland Security's Written Closing Argument, dated July 17, 2014), and DHS Immigration and Customs Enforcement ("ICE") granted Neziri deferred action status, which allowed Neziri to remain in the United States and obtain employment authorization. Mot. Summ. J. Ex. I 1-2 [#18-11] (Notice of Deferred Action).

In December 2013, ICE revoked Neziri's deferred action status following two arrests for operating a vehicle under the influence. Id. at 2. Neziri was issued a Notice of Intent to Issue a Final Administrative Removal Order as a Visa Waiver Program Violator, Mot. Summ. J. Ex. F. 2 [#18-8] (Notice of Intent to Issue a Final Administrative Removal Order), and a final administrative removal order. Id. at 1 (Final Administrative Order). On January 16, 2014, ICE took Neziri into custody. Mot. Summ. J. Ex. K 3 [#18-13] (Record of Deportable/Inadmissible Alien); Ex. E [#18-7] (Notice to EOIR).

Neziri timely challenged his removal and immigration proceedings before Immigration Judges and the Board of Immigration Appeals ("BIA"), and on January 21, 2016, petitioned for review before the United States Court of Appeals for the First Circuit. Dkt., Neziri v. Lynch, No. 16-1101 (1st Cir. 2016).

Meanwhile, on September 3, 2015, Neziri commenced the instant action. Neziri petitioned for a writ of habeas corpus, alleging that the length of his detention had become unreasonably prolonged. He additionally sought a judgment declaring his asylum-only proceedings under the Visa Waiver Program unlawful and an order terminating his asylum-only proceedings and compelling the government to re-institute removal proceedings against him.

On November 10, 2015—after the instant case was initiated—ICE issued an explanation for Neziri's detention, citing his recidivist criminal history and risk of flight. Mot. Summ. J. Ex. N (ICE Decision to Detain).

Then, on November 13, 2015, the government filed a joint Motion to Dismiss/Motion for Summary Judgment [#18]. The government moved to dismiss Neziri's declaratory judgment claim for lack of subject matter jurisdiction and moved for summary judgment as to Neziri's habeas petition.

On April 8, 2016, the court allowed the government's motion to dismiss Neziri's declaratory judgment claim, concluding that the REAL ID Act of 2005, 8 U.S.C. § 1101 et seq., divested the court of jurisdiction over that claim. Order Mot. Dismiss [#38].

On May 5, 2016, the court allowed in part and denied in part Neziri's petition for writ of habeas corpus. Mem. & Order [#40]. The court held that Neziri's 27-month detention without a hearing was unreasonably prolonged and therefore violated due process. Id. The court ordered an Immigration Judge to conduct an individualized bond hearing. Id. As a result of that bond hearing, Neziri was released on $12,000 bond on May 20, 2016. Status Report [#41].

III.  Discussion

Under EAJA, "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make the award unjust." 28 U.S.C. § 2412(d)(1)(A).

The government does not dispute that Neziri is a prevailing party. See, e.g., Geegbae v. McDonald, No. 10-10852-JLT, 2011 WL 841237, at *1 (stating that a "party who has successfully petitioned for a writ of habeas corpus is a 'prevailing party'"). Instead, the

government contends that its position was substantially justified.

The government must prove by a preponderance of the evidence that its position was substantially justified in both law and fact, both before and during litigation. See Pierce v. Underwood, 487 U.S. 552, 563, 565 (1988) (on burden of proof and need for positions to be justified in both law and fact); Aronov v. Napolitano, 562 F.3d 84, 94 (1st Cir. 2009); see also 28 U.S.C. § 2412(d)(2)(D) (requiring that the government show that both its position in litigation and the agency conduct giving rise to the litigation were substantially justified). However, the standard is not to "be read to raise a presumption that the Government position was not substantially justified simply because it lost the case . . . ." Scarbrorough v. Principi, 541 U.S. 401, 415 (2004); see also Saysana v. Gillen, 614 F.3d 1, 5 (1st Cir. 2010) (noting that the government's position may be substantially justified even if the court determines that the government's reading of the law was incorrect). Instead, "reasonableness" governs the inquiry. See Pierce, 487 U.S. at 566 n.2.

Here, the government took the position that Neziri's nearly two-year-long and potentially indefinite detention: was authorized by a statutory framework "designed to ensure [Neziri's] swift and efficient removal"; did not and could not raise *any* "constitutional concerns"; and was an exercise of executive discretion unreviewable by this court. Mot. Summ. J. 10, 13-14.

The Supreme Court has made clear that indefinite detention generally raises "serious constitutional problem[s]," Zadvydas v. Davis, 533 U.S. 678, 690 (2001), and that despite whatever wide berth provided to the Executive by Congress, detention in connection with deportation must still be temporally and conceptually cabined by the underlying purposes of the authorizing statute. See Demore v. Kim, 538 U.S. 510, 522-30 (2003). The government could have argued that indefinite detention under 8 U.S.C. § 1187 *could* run afoul constitutional

4

protections under circumstances unlike Neziri's, but instead the government's papers may fairly be read to have asserted the right to detain under the VWP without any underpinning constitutional constraint. For example, without any reference to Neziri's particular circumstances, the government averred that the "heightened government interests inherent in VWP proceedings, and the underlying purpose of the VWP to effectuate swift and efficient removal of VWP violators, make it clear that the government's regulatory interests outweigh Petitioner's liberty interest." Mot. Summ. J. 11.

Granted, on November 10, 2015, ICE issued a written decision on Neziri's detention. But the government's position as outlined before the court did not cast that November 10 letter as anything other than a ministerial act: the government's papers did not depend on that letter but instead on the argument that 8 U.S.C. § 1187 insulated Neziri's detention from constitutional challenge.[1]

Turning to the fees themselves, this court employs the familiar lodestar method whereby it calculates "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The court thus begins by finding that although EAJA provides for a presumptive statutory cap of $125 per hour, counsel's hourly rate of $300 is consistent with the credible affidavit from Kerry Doyle, who states Neziri would not have been able to find a skilled immigration attorney who had experience

---

[1] In so ruling, the court is cognizant that the Board of Immigration Appeals had held that Immigration Judges did not have jurisdiction to re-determine the conditions of custody of an alien admitted pursuant to the VWP. See Matter of A-W-, 25 I. & N. Dec. 45 (BIA 2009). Under that decision, the Department of Homeland Security—of which ICE is a part—had the exclusive authority to determine the conditions of a VWP detainee's custody. Id. But the court is here charged with evaluating the government's burden of demonstrating substantial justification for its litigation position as to the constitutionality of Neziri's detention, and that position is measured not against an agency decision but against Supreme Court substance.

litigating in federal court at a rate of under $300. Aff. Kerry R. Doyle [#43-3]. The court will thus assess counsel's fees at the hourly rate of $300 because of the "limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A)(ii). As to the paralegal and/or administrative assistant hourly rate, the court finds the rate of $100 to be reasonable. See Castaneda-Castillo v. Holder, 723 F.3d 48, 77 (1st Cir. 2013) (awarding fees for paralegals at the hourly rate of $100).

In determining the number of hours reasonably spent when "a plaintiff has achieved only partial or limited success," reduction may be appropriate. Hensley, 461 U.S. at 436. Neziri prevailed in substantial part on his habeas petition, but he did not prevail on his declaratory judgment action. Finding some reduction to be appropriate in light of petitioner's substantial but not complete victory, the court reduces Neziri's fees by twenty percent.

Further, while the court further finds that the billing entries submitted with the instant motion provide sufficient explanation to justify Neziri's fee request, the court finds that 2.9 hours submitted as lawyer time are more reasonably classified as paralegal time and should be compensated at the paralegal rate. The court thus re-classifies that time and reduces counsel's total fee request of $17,740 by a corresponding $580, resulting in a total fee—before the 20% reduction, see supra—of $17,160. The twenty percent reduction yields a total award of $13,728 in fees.

Finally, as Neziri prevailed only on the habeas petition (which required a $5 filing fee), and not on his declaratory judgment action (which required a $400 filing fee), the court reduces the $400 filing fee requested by $395, resulting in total costs of $55.

The court thus allows a total award—combining adjusted attorney's fees, paralegal fees, and costs—of $13,783.

IV.     Conclusion

For the reasons stated above, Neziri's Application/Motion for Attorney's Fees and Costs Pursuant to the Equal Access to Justice Act [#43] is ALLOWED in the amount of $13,783.

IT IS SO ORDERED.

Date:  March 28, 2017                                                        /s/ Indira Talwani
                                                                                      United States District Judge